**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| STATE OF GEORGIA,<br><br>v.<br><br>MARK R. MEADOWS | Case No. 1:23-cv-03621-SCJ |
| STATE OF GEORGIA<br><br>v.<br><br>JEFFREY BOSSERT CLARK | Case No. 1:23-cv-03721-SCJ |

**BRIEF OF *AMICI CURIAE* CYNTHIA ALKSNE, ERWIN CHEMERINSKY,**
**AMY LEE COPELAND, JULIE GROHOVSKY, SARAH SALDANA, AND**
**SHAN WU IN OPPOSITION TO THE EMERGENCY MOTIONS OF**
**DEFENDANTS**
**JEFFREY BOSSERT CLARK AND MARK R. MEADOWS**

## INTERESTS AND IDENTITY OF AMICI CURIAE

*Amici* are former prosecutors and a federal courts scholar. They have decades of experience with the issues raised in Jeffrey Clark's and Mark Meadows's emergency motions, including those regarding removal and collateral consequences in the federal and state court contexts. *Amici* seek leave to file this brief because, given their decades of public service, their personal familiarity with the law enforcement and constitutional issues at issue here, and their commitment to the integrity of our democratic system, they maintain an active interest in the proper resolution of the questions raised by the emergency motions.

## INTRODUCTION

On August 14, 2023, a grand jury in Fulton County, Georgia indicted Mark Meadows, Jeffrey Clark and 17 other co-defendants on 41 counts related to unlawful interference in the 2020 presidential election in Georgia. Early the next morning, District Attorney Fani Willis announced that she would allow defendants until Friday, August 25, to voluntarily surrender and thus not face arrest like most criminal defendants. Having waited a week, Clark and Meadows now seek emergency relief prohibiting their arrest.

Before the Court are Clark's and Meadows's emergency motions requesting that the Court prohibit their arrest prior to determining whether "removal shall be permitted" under 28 U.S.C. § 1455(b)(5). The Court should reject these motions.

1

The removal statutes make clear that State criminal proceedings may continue until the district court determines that removal is permitted, so long as there is no entry of judgment of conviction during that time. *Id.* at § 1455(b)(3). Indeed, the statutes expressly contemplate that removing defendants may be taken into state custody while a removal decision is pending. *Id.* at § 1455(c). If Congress had wanted to provide authority to enjoin State criminal proceedings or arrests before the § 1455(b)(5) determination, it could have. But absent such an authorization, the Court has no authority to interfere with the state proceedings. Instead, the Court should proceed as it has to date: by scheduling a "prompt[]" evidentiary hearing and making a decision whether removal "shall be permitted" at some time "after such hearing." *Id.* at § 1455(b)(5). That is all that Congress required—no more and no less.[1]

---

[1] *Amici* address here only the arguments related to Meadows's and Clark's emergency motions and do not at this time address the merits of their respective notices of removal. Regardless of the merits, or lack thereof, of the removal arguments, the Court can quickly dispose of the two emergency motions for the reasons explained herein.

No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than *amici* or their counsel made a monetary contribution to the preparation or submission of this brief.

## I.   The Potential for Arrest or Other Burdens of Litigation in State Court Are Consistent with Congressional Design in Removed Criminal Prosecutions.

Meadows claims that the Court must act urgently—either by accelerating its § 1455(b)(5) determination or issuing an injunction in the meantime—so that he is not "denied the protection from arrest that federal law affords former federal officials" and to avoid frustrating this Court's "prompt but orderly consideration of removal." Meadows Mot. 2. Clark—with little argument—similarly asks the Court to issue a nearly two-week "administrative stay" until September 5 pending the Court's ruling under § 1455(b)(5).

Clark and Meadows begin from the same faulty premise: that federal law prohibits States from arresting federal officials. This is not true, even if the federal officials have removed criminal prosecutions under 28 U.S.C. § 1442, and even if they assert defenses based on the Supremacy Clause.

### A.  *The state court retains jurisdiction over this criminal proceeding.*

As a general matter, there is a "strong judicial policy against federal interference with state criminal proceedings," recognized even in cases involving federal officers. *Mesa v. California*, 489 U.S. 121, 138 (1989) (construing the federal officer removal statute, 28 U.S.C. § 1442). This policy flows from the bedrock principles underlying "Our Federalism"—a "recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States

3

and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). In this system, "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not interfere with the legitimate activities of the States." *Id.*

Congress's provision for federal officer removal has long reflected these key federalism principles. While it has long been clear that Congress has the constitutional authority to permit federal officers to remove criminal cases arising out of their duties, *Tennessee v. Davis*, 100 U.S. 257, 263-64 (1879), for the vast majority of our Nation's history, Congress has excluded officers such as Clark and Meadows from the benefits of that "exceptional" procedure. *Maryland v. Soper,* 270 U.S. 9, 35 (1926). Until 1948, removal was generally available only to officers enforcing federal revenue laws. *Willingham v. Morgan*, 395 US. 402, 405-06 (1969). The Judicial Branch, for its part, has protected these federalism values by limiting the right of removal in criminal cases to a "fair construction" of the statutory text. *Mesa,* 489 U.S. at 139. Here, a fair reading of that text shows that federal courts have no authority to intervene in State prosecutions of federal officers, including to prohibit arrest, until they determine that "removal shall be permitted" under 28 U.S.C. § 1455(b)(5).

4

Unlike in civil actions, where the state court loses jurisdiction as soon as it receives a notice of the removal, 28 U.S.C. § 1446(d), a notice of removal in a criminal case has almost no effect on state-court jurisdiction. With one exception, "[t]he filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further." *Id.* at § 1455(b)(3). All that is forbidden based on the removal notice is entry of "a judgment of conviction." *Id.* This policy of federal non-interference continues regardless of the district court's determination that the case should not be summarily remanded. *See id.* at § 1455(b)(4). Rather, it is only after the district court "determines that removal shall be permitted" and notifies the state court of that decision that the state court "shall proceed no further." *Id.* at § 1455(b)(5). We are now well before entry of any judgment in the State court proceedings, and until this Court determines that "removal shall be permitted," there is no basis to enjoin the state court from issuing an arrest warrant or conducting any other pre-trial activities. *See* O.C.G.A. § 17-7-90 (providing for judicial issuance of bench warrants "for the arrest of a person accused of a crime by a grand jury").

If subsections (b)(4)-(5) left any doubt about the propriety of State arrest before the determination regarding removal, subsection (c) would remove it. That provision expressly contemplates that a removing defendant may be placed in "actual custody on process issued by the State court." 28 U.S.C. § 1455(c). Rather

than prohibiting the State from arresting and incarcerating a removing defendant, the statute directs only a transfer to federal custody upon issuance of a writ of *habeas corpus*. *Id.* If Congress wanted to prohibit defendants from being taken into State custody pursuant to state-court process, it would have said so. But instead, it expressly contemplated State arrest of a removing defendant and directed only that he be transferred to federal custody pursuant to § 1455(c). Because § 1455's language regarding State detention of removing criminal defendants is "plain and unambiguous," the only proper course is to "employ that plain meaning." *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023). The Court cannot rewrite the statute. *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1224 (11th Cir. 2009).

That Clark and Meadows are federal officers makes no difference. The federal officer removal statute already conveys an "exceptional" privilege for those entitled to invoke it—the right to remove a state prosecution to federal court. *Soper*, 270 U.S. at 35. That statute does not impose any restrictions on the arrest of the officer or otherwise differentiate removal procedures for federal officers from the rest of the limited class of criminal defendants entitled to remove. *See* 28 U.S.C. § 1442. Indeed, neither Clark nor Meadows identifies anything in the federal officer removal statute suggesting the contrary.

B. *Clark's and Meadows's citations to inapposite authority do not support their arguments.*

Clark and Meadows do not meaningfully engage the statutory scheme governing the allocation of jurisdiction between state and federal courts under §§ 1442 and 1455. Instead, Meadows cites two cases for the proposition that the Supremacy Clause "protects federal officials from being 'arrested and brought to trial in state court.'" *See* Meadows Mot. 2 (quoting *Davis*, 100 U.S. at 263). First, *Davis* holds nothing of the sort. The case involved whether Congress had the constitutional authority to authorize removal in criminal prosecutions of revenue agents under a predecessor statute—not whether state authorities could arrest federal officers. *See id.* at 262 (considering "whether sect. 643 is a constitutional exercise of the power vested in Congress"). Meadows's inclusion of an out-of-context quote from *Davis* does not in fact support his argument. The problem the Court identified in the sentence Meadows quotes was not simply that a federal official might be "arrested and stand trial" in state court; it was that the federal government might be "powerless" to intervene if that occurred, such that the officials' protection would "be left to the action of the State court." *Id.* at 263. Here, there's no question whether Congress has the Constitutional authority to

provide for removal under the federal officer removal statute. Rather, the question is what rights Congress has provided.[2]

Meadows's reliance on *New York v. Tanella*, 374 F.3d 141 (2d Cir. 2004) is likewise misplaced. That case, which is not binding here, directs only that a motion to dismiss based on the Supremacy Clause should be decided pre-trial. *See id.* at 147 (explaining that the Supremacy Clause defense "ought to be decided early in the proceedings so as to avoid requiring a federal officer to run the gauntlet of standing trial and having to wait until later to have the immunity issue decided" (cleaned up)). It says nothing about States' authority to arrest federal officers on state charges—much less before a district court even determines it has jurisdiction under 28 U.S.C. § 1455(b)(5).

Absent a finding that removal is permitted under § 1455(b)(5), complaints about being subject to the burdens associated with the state-court proceeding are simply irrelevant. *See* Meadows Mot. 11; Clark Mot. 5-7. As Meadows acknowledges, under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts do not "enjoin pending state criminal proceedings" except in "extraordinary

---

[2] To be clear, there is no constitutional barrier to state courts evaluating criminal defendants' federal defenses. Indeed, the vast majority of criminal defendants must litigate their federal defenses in State court, including any federal officer who fails to timely remove. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975) ("The principle. underlying *Younger* [abstention] is that state courts are fully competent to adjudicate constitutional claims. . . .").

circumstances." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1262 (11th Cir. 2004).

Meadows contends that being "required to defend himself in state criminal

proceedings pending the Court's adjudication of his notice of removal" allows him

to bypass *Younger*, but this burden is not at all "extraordinary." Instead, that is

precisely the burden that Congress decided to permit when balancing State and

federal interests under section § 1455.

Even if *Younger* did not apply, Meadows's arguments could not overcome

the Anti-Injunction Act, 28 U.S.C. 2283. *See* Meadows Mot. 11-12. Meadows

cannot evade the law's proscriptions by asking for an injunction against District

Attorney Willis, rather than against the State court issuing a warrant. *Upper

Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 675 n.4

(11th Cir. 2012). And assuming that Meadows is right that § 1455(b)(5)'s direction

that a state court "proceed no further" after receiving notice of the determination

that "removal shall be permitted" satisfies the exception for injunctions "expressly

authorized by Act of Congress," 28 U.S.C. § 2283, the Court has not yet decided

whether "removal is permitted." Until then, no stay is "expressly authorized" under

§ 1455(b)(5).[3]

---

[3] None of the out-of-circuit cases Meadows cites on page 10 involving stays of
"*other* litigation inconsistent with the defendant's right to removal" applies here.
S*ee Davis Int'l, LLC v. New Start Grp. Corp.*, 367 F. App'x 334, 337 (3d Cir. 2010)
(authorizing stay of re-filed civil case that was a "fraudulent[] attempt[] to subvert

Clark's and Meadows's perfunctory arguments couched in terms of seeking a weeks-long "administrative stay" or a stay to "protect this Court's jurisdiction and orderly consideration of the pending [removal] Notice" cannot justify relief. Meadows's only argument on this point is that allowing his arrest would effectively nullify the Court's August 16 Order declining summary remand. But as already explained, it is only the determination that "removal shall be permitted" under 28 U.S.C. § 1455(b)(5) that ends state-court jurisdiction. A decision not to summarily remand has no effect on state-court proceedings short of entry of a judgment of conviction. *Id.* § 1455(b)(3)-(4). And imposing an administrative stay pending decision whether removal "shall be permitted" violates Congress' decision to preserve state-court jurisdiction until the district court "determines that removal shall be permitted" § 1455(b)(5). *Id.* § 1455(b)(3), (5).

Finally, Meadows's invocation of the four-factor stay standard under *Nken v. Holder*, 556 U.S. 418 (2009), misses the mark, because that standard is inconsistent with the express terms of § 1455. Section 1455 does not provide for halting state-court proceedings based on an analysis of the likelihood of success, irreparable injury to the movant, the balance of harms, and the public interest.

---

the removal statute"); *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1378 (9th Cir. 1997) (authorizing stay of civil case filed later to "f*or the purpose of subverting federal removal jurisdiction,*" but holding that the rule did not apply); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 617, allowing injunction against later-filed, identical Japanese lawsuit).

Instead, it provides that only upon a determination that removal is permitted must the State court cease exercising jurisdiction. What is more, *Nken* dealt with whether a final agency decision should be stayed and applied the standard governing judicial review of final decisions. 556 U.S. at 426-27. In contrast, §§ 1442 and 1455 operate pursuant to *Younger* and the Anti-Injunction Act, each of which counsels strongly against interfering with ongoing State criminal proceedings. Indeed, Meadows cites no example of a court applying *Nken* to enjoin State criminal proceedings.

## II.   Section 1446(d) does not justify a stay.

Unlike Meadows, Clark relies principally upon 28 U.S.C. § 1446(d) to argue that it lacks jurisdiction. Section 1446(d) provides that when a *civil* action is removed, notice to the state court of the removal requires the state court to "proceed no further." Of course, as Clark himself admits, the proceeding against Clark and 18 co-defendants pursuant to an indictment obtained by the Fulton County District Attorney's Office is *not* a civil action, but criminal in nature. *See* Clark Mot. at 2 (referring to "a criminal process pursuant to a Fulton County indictment"). However, Clark insists § 1446(d) nevertheless applies because his Notice of Removal purports to include not just the "criminal process" under which he has been indicted, but also the Special Purpose Grand Jury ("SPGJ") proceedings, which he alleges is a civil action.  This argument is wrong at every

11

turn. The SPGJ proceedings were not "against or directed to" Clark under 28 U.S.C. § 1442, and therefore he cannot remove them.  Moreover, even if he could remove the SPGJ proceedings, they are criminal in nature and § 1446(d) therefore does not apply. A stay is not warranted.

A. *The SPGJ proceedings were not directed at Clark, and he cannot remove them.*

A federal officer can attempt to remove a civil action or criminal prosecution pursuant to 28 U.S.C. § 1442 only if the proceeding is "against or directed to" that officer. Clark states, without support, that the SPGJ proceedings were "in part, 'against or directed to'" him. Clark Not. of Removal at ¶ 42. But he also admits that, during the entirety of the SPGJ investigation, he was not subpoenaed to testify before the SPGJ or notified that he was a target or subject of the investigation. *Id.* ¶ 14. Instead, he is left to speculate that the proceedings "*likely* involved District Attorney Willis likely putting allegations about Mr. Clark to the SPGJ." *Id.* ¶ 16 (emphasis added). This is insufficient to demonstrate that the SPGJ proceedings were against or directed to Clark, such that he is able to remove them.

In 2011, as Congress considered legislation (that would eventually pass) to amend 28 U.S.C. § 1442, the Committee on the Judiciary submitted a report explaining the reasoning behind the proposed changes to the removal statute. *See* H.R. Rep. No. 112-17 (2011). The Report noted an observed discrepancy in the

application of the statute to federal officers who were not parties to existing litigation—when these officers were served with pre-suit discovery, they were sometimes permitted to remove to federal court and sometimes not. Legislation was therefore drafted to add that proceedings against or "*directed to*" federal officers may be removable, "to take into account the operation of these State pre-civil suit discovery statutes." H.R. Rep. No. 112-17, at 4, 7. As explained in the Report, the change in the language was to address this specific issue of pre-suit motions directed at federal officers, not to expand the statutory provision to allow any federal officer or agency tangentially related to a proceeding to remove. Subsequent courts decisions have construed the language within these boundaries. In *Toppins*, for example, the court remanded where the federal agency that had attempted to remove the case was "neither a party nor subject to any order or subpoena" in the relevant matter. *Alabama One Credit Union v. Toppins*, 2017 WL 2313012, at *3 (N.D. Ala. Apr. 18, 2017) (magistrate recommendations later adopted by the court). The non-party federal agency had sought to remove after a state court had ordered a party to produce documents that had to do with the agency. The court held that the agency had no authority to remove where it was not a party nor the entity that had to respond to the discovery order. The proceedings were not sufficiently "against or directed to" the federal agency, despite its interests being implicated in the discovery proceedings. *See also, e.g.*, *Hammer v.*

13

*U.S. Dep't of Health & Human Servs.*, 905 F.3d 517, 528 (7th Cir. 2018) (holding federal agency can remove where it was ordered to respond to a motion and may have to produce withheld money). Clark has no right to remove here, where he admits he is not a party to nor has he been subject to any discovery or similar proceedings during the SPGJ investigation.

   B. *The SPGJ proceedings are criminal in nature.*

   Even if Clark could properly remove the SPGJ proceedings, §1446(d) cannot apply here because the SPGJ proceedings are criminal in nature. Thus, removing the SPGJ proceedings along with the "criminal process" pursuant to the indictment does not transform this matter into one that is a "civil-criminal hybrid action" as Clark claims. *See* Clark Mot. at 2.

   While special purpose grand juries in Georgia can be civil or criminal in nature, multiple courts, including the Fulton County Superior Court judge presiding over the SPGJ, Judge Robert McBurney, have consistently held that the SPGJ investigating 2020 election interference in Georgia was a criminal body. Judge McBurney explicitly stated that the "purpose [of the SPGJ] is unquestionably and exclusively to conduct a criminal investigation: its convening was sought by the elected official who investigates, lodges, and prosecutes criminal charges in this Circuit; its convening Order specifies its purpose as the investigation of possible criminal activities; and its final output is a report

14

recommending whether criminal charges should be brought"). Order Denying Motion to Quash, *In re Special Purpose Grand Jury*, No. 2022-EX-000024, at 4-5 (Ga. Sup. Ct. Aug. 29, 2022). And the South Carolina Supreme Court, for example, rejected an argument from Meadows that the SPGJ is not a criminal body as "manifestly without merit." *Meadows*, 2022 WL 17335653, at *1. Other courts have reached the same result. Order, *In re Flynn*, Case Nos. 2D22-3725, 2D22-3925 (Fla. 2d DCA Dec. 6, 2022) (refusing to stay order requiring testimony before SPGJ based on similar argument); Order Directing Witness to Appear in the Superior Court, Fulton County, Georgia, *In re Gingrich*, Case No. KM 2022-623 (Va. Cir. Ct. Nov. 9, 2022).[4]

### C. Clark cannot remove two proceedings as a "criminal-civil hybrid" so as to gain the advantage of the automatic stay.

Even if the SPGJ were a civil proceeding within the meaning of § 1446, that would not cause the statute's provision for an automatic stay to apply to the separate criminal proceeding that Clark also seeks to remove. By its terms, §

---

[4] Clark's only support to the contrary is a citation to mistaken obiter dicta. In *Kenerly v. State*, the Georgia Court of Appeals misread an earlier intermediate-court decision, *State v. Bartel*, 479 S.E.2d 4 (1996), as having "concluded that special purpose grand juries conduct *only* civil investigations." *Kenerly*, 715 S.E.2d 688, 692 (Ga. Ct. App. 2011) (citing *Bartel*, 479 S.E.2d at 5 [697 of the official reports]). But the *Kenerly* court was simply mistaken: *Bartel* does not state that special purpose grand juries "only" conduct civil investigations but instead acknowledges that both special purpose and general grand juries can conduct civil investigations.

1446(d)'s direction to "proceed no further unless and until the case is remanded" is narrow; it "deprives the state court of jurisdiction and restricts the state court's actions *only* as to the removed case." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 250 (4th Cir. 2013) (collecting authority). But Clark's motion does not ask the Court to enjoin any proceedings relating to the SPGJ. The SPGJ did not indict Clark (it lacked the power to), and any arrest warrants would be issued pursuant to the grand jury's indictment. *Kenerly v. State*, 311 Ga. App. 190, 191 (2011); O.C.G.A. § 17-7-90. Any continued criminal proceedings thus do not violate § 1446(d)'s command that civil proceedings "shall not proceed" post-removal.

Despite this, Clark contends that the supposed relationship between the SPGJ proceeding and the criminal proceeding makes a "criminal-civil hybrid" to which section 1446(d) applies.  But the removal statutes do not have a category for "criminal-civil hybrid" cases. Section 1442 allows for removal of "*[a]* civil action *or* a criminal prosecution"—not both. 28 U.S.C. § 1442(a). And section 1446— with its stay under subsection (d)—allows only for removal of a "civil action." 28 U.S.C. § 1446(a). Clark's argument that he may remove two proceedings (and then call it a hybrid action), is purportedly based on 28 U.S.C. § 1442(d)(1), which defines "the terms 'civil action' and 'criminal prosecution' [to] include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents,

16

is sought or issued." Clark Removal Notice 9. But the plain text of that section

means only that "any proceeding" in which a "judicial order . . . is sought or

issued" may be removed if it otherwise meets § 1442's requirements. It does not

say that multiple proceedings can be removed on one notice and meshed into some

sort of hybrid that defeats the careful jurisdictional balance set out in § 1455.

Clark's argument is textually baseless and unsupported by any authority.

## CONCLUSION

For the reasons above, the Court should not enjoin the State court

proceedings or prohibit the arrest of Clark or Meadows pending its consideration

of removal under 28 U.S.C. § 1455. Nor should it accelerate its consideration of

removal due to the potential that State proceedings will advance during that time.

Congress specifically contemplated that state proceedings would proceed while a

district court consider whether "removal shall be permitted," and it declined to

authorize any intrusion into the state proceedings outside the parameters of § 1455.

This Court is not empowered to second-guess that Congressional determination.

Respectfully submitted,

 /s/ Brian Kammer
Brian Kammer (Ga. 406322)
Kammer Law Office LLC
241 E Lake Dr
Decatur, GA 30030
(678) 235-4964
attybkammer@gmail.com

17

Maithreyi Ratakonda*
STATES UNITED DEMOCRACY CENTER
1 Liberty Plaza, 165 Broadway, Office 2330
New York, NY, 10006
Tel.: (202) 999-9305
mai@statesuniteddemocracy.org

Jonathan Williams*
STATES UNITED DEMOCRACY CENTER
400 NW 7th Ave. #14310
Fort Lauderdale, FL 33311
Tel.: (202) 999-9305
jonathan@statesuniteddemocracy.org

*Pro hac vice applications forthcoming

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been prepared in Times New Roman, 14-point font, one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

/s/Brian Kammer

Brian Kammer
Georgia Bar No. 406322

*Counsel for Amici Curiae*