**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | CIVIL ACTION NO. |
| | ) | 1:23-cv-03621-SCJ |
| | ) | |
| v. | ) | |
| | ) | RE: NOTICE OF REMOVAL |
| | ) | OF FULTON COUNTY |
| | ) | SUPERIOR COURT |
| MARK RANDALL MEADOWS | ) | INDICTMENT NO. |
| | ) | 23SC188947 |

**STATE OF GEORGIA'S POST-HEARING BRIEF**

Following an evidentiary hearing held on August 28, 2023, the Court directed the parties to submit additional briefing on a single question:

> Count 1 of the Indictment (pertaining to Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO), O.C.G.A. § 16-14-4(c)) contains a number of overt acts attributed to Mr. Meadows. Would a finding that at least one (but not all) of the overt acts charged occurred under the color of Meadows's office, be sufficient for federal removal of a criminal prosecution under 28 U.S.C. § 1442(a)(1)?

For all of the following reasons, the State of Georgia responds that the answer to this question is no. A finding that at least one, but not all, of the overt acts attributed to the defendant would not be sufficient to authorize removal.

## I. The defendant's prosecution commenced not from any individual overt act, but from his entry into a conspiracy.

The defendant's prosecution was not commenced against him "for or related to any act" under color of his office. 28 U.S.C. § 1442(a)(1). The defendant's prosecution commenced because he knowingly and willfully entered into an agreement to violate the Georgia RICO Act. The overt acts alleged in the Indictment, as with any indictment charging a violation of a conspiracy statute containing an overt act requirement, are required to be pled only to "demonstrate the conspiracy was actually 'at work'". *Nordahl v. State*, 306 Ga. 15, 26 n.22 (2019), citing *Carlson v. United States*, 187 F.2d 366, 370 (10th Cir. 1951).

The defendant is charged in Count 1 with agreeing to join a conspiracy that planned to overturn the lawful results of an election in Georgia. A scenario where at least one, but not all, of the overt acts attributed to the defendant in Count 1 of the Indictment occurred under color of office would not be sufficient to authorize removal because it would not demonstrate that his agreement to join in the RICO conspiracy described in Count 1 was an act "for or related to" his duties as Chief of Staff.

An examination of RICO and conspiracy law more generally illustrates the crucial difference between a single overt act and joining a conspiracy. Count 1 charges the defendant with a violation of O.C.G.A. § 16-14-4(c), in that he

"conspired and endeavored to participate in" an enterprise to violate O.C.G.A § 16-14-4(b). Subsection (a)(1) of the statute is violated when a person "together with one or more persons conspires to violate any of the provisions of subsection (a) or (b) of this Code section and anyone or more of such persons commits any overt act to effect the object of the conspiracy . . ." O.C.G.A. § 16-14-4(b) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

The question posed by this Court contemplates a finding that the defendant has committed at least one overt act under Count 1 outside the color of his office. This would be *more* than what is required to demonstrate the defendant's participation in the RICO conspiracy. In contrast to a substantive violation of O.C.G.A. § 16-14-4(b), a conspiracy to violate that provision does not, as the language of subsection (c)(1) makes clear, require that a defendant commit or agree to commit two acts of racketeering activity himself. *Faillace v. Columbus Bank & Trust Co.*, 269 Ga. App. 866, 870, 605 S.E.2d 450, 454 (2004), citing *Salinas v. United States*, 522 U.S. 52, 63 (1997). Under Georgia law, a person is guilty of a RICO conspiracy "if they knowingly and willfully *join a conspiracy* which itself contains a common plan or purpose to commit two or more predicate acts." *Cotman*

*v. State*, 342 Ga. App. 569, 585, 804 S.E.2d 672, 684 (2017) (emphasis added). While Georgia RICO, unlike federal RICO, requires that one of the conspirators commit an overt act, *there is no requirement that the defendant himself commit an overt act* because "each actor in a conspiracy is responsible for the overt actions undertaken by all the other co-conspirators in furtherance of the conspiracy." *Pasha v. State*, 273 Ga. App. 788, 616 S.E.2d 135, 138 (2005) (citing *Causey v. State*, 154 Ga. App. 76, 79, 267 S.E.2d 475, 479 (1980); *accord Akintoye v. State*, 340 Ga. App. 777, 780, 798 S.E.2d 720, 724 (2017) (applying general conspiracy law to RICO: "It is well settled that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one or more of the conspirators is in legal contemplation the act of all."). This is consistent with federal conspiracy law. *Bannon v. United States*, 156 U.S. 464, 469 (1895) (rejecting proposed requirement that the government allege defendant personally commit an overt act).

Because "[a] conspiracy is a partnership in crime . . .", *Pinkerton v. United States*, 328 U.S. 640, 644 (1946),[1] the gravamen of a RICO conspiracy is "premised

[1] Georgia courts have applied *Pinkerton*. *McLeod v. State*, 279 Ga. 99, 102, 772 S.E.2d 641, 644 (2015). Thus, "[as] a co-conspirator and party to a crime, the racketeering activity underlying Whaley's RICO violation included not only the acts of himself, but also of Rice." *Whaley v. State*, 343 Ga. App. 701, 704, 808 S.E.2d 88, 92 (2017).

not upon the commission of the predicates of racketeering, or even an agreement to commit predicate acts, but upon an agreement to participate in the affairs of the criminal enterprise through a pattern of racketeering activity."[2] *de la Osa v. State*, 158 So.3d 712, 731 (Fla. App. 2015) (citing, *inter alia*, *Salinas*, 522 U.S. at 63-66).

The Indictment alleges that the defendant conspired to violate the Georgia RICO statute, and the State of Georgia has submitted evidence substantiating that allegation. The defendant coordinated and actively participated in a phone call between codefendant Donald J. Trump, lawyers for Mr. Trump's presidential campaign, and officials from the Georgia Secretary of State's Office, during which Mr. Trump berated the Secretary to overturn the results of an election Mr. Trump had lost. On the call, the defendant used the inclusive pronoun "we" to refer to information possessed by the campaign and its lawyers, and he directly disputed the Secretary's investigatory findings regarding the number of "dead voters," insisting "I can promise you there are more than that." Earlier, the defendant contacted another Secretary of State official and inquired whether the Trump campaign could "speed up" a signature audit by providing funding directly to the State. And after

---

[2] *See Jefferson County v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part) ("The point is only that the officer should have to identify as the gravamen of the suit an act that was, if not required by, at least closely connected with, the performance of his official functions.").

insisting that he did not play "any role" in the coordination of slates of "fake electors" throughout several states, the defendant was forced to acknowledge under cross-examination that he had in fact *given direction to* a campaign official in this regard. Specifically, the defendant wrote an email, State's Exhibit 1, in which he said, "We just need to have someone coordinating the electors for the states" and attached a memorandum written by co-defendant Kenneth Chesebro recommending the organization of slates of presidential electors to meet and cast votes for Mr. Trump in states Mr. Trump had lost.[3]

The defendant has not disputed his participation in these events; he simply argues that all of them were within the scope of his duties and occurred under color of office. The Court thus has undisputed evidence of the defendant committing the act at issue in Count 1: conspiring to violate Georgia's RICO statute by joining in a common plan to overturn the results Georgia's 2020 presidential election. A finding that some of the *overt acts* attributed to the defendant occurred under color

---

[3] The Court has ample basis not to credit some or all of the defendant's testimony from the evidentiary hearing. In addition to the contradiction highlighted above, the defendant said repeatedly that he misused the pronoun "we," an assertion that would materially alter the plain meaning of several of his relevant statements. The defendant also repeatedly insisted he was merely "trying to land the plane" and achieve "a peaceful transition of power," a statement clearly belied by his participation in the Trump campaign's attempts to overturn the outcome of Georgia's election.

of office would not suffice to show that the defendant's *joining in the conspiracy* was itself under color of office or even related to it.

A case familiar to this Court provides a useful example of a scenario where a federal officer's entry into a conspiracy *could* occur under color of office. In *Baucom v. Martin*, a local prosecutor was considering filing charges against an FBI agent for the agent's activities related to an attempt to bribe a local official. 677 F.2d 1346, 1347-48 (11th Cir. 1982). The attempted bribe was part of a joint federal-state investigation into local government corruption and possible federal RICO violations. The Eleventh Circuit held that any attempt to secure a bribe fell within the agent's duties as a federal officer conducting such an investigation and the prosecution was therefore barred by Supremacy Clause immunity. *Id.* at 1350. If the agent and others had been charged with conspiracy for their coordinated plan seeking to bribe a local official, the case would have been subject to removal because the *act of conspiring* in that case would clearly have been committed under color of the agent's office.

The circumstances of this case are easily distinguishable. The defendant conspired not for any purpose related to his duties as Chief of Staff, but to transform Mr. Trump from a losing political candidate into a winning one, no matter what the outcome of the election had actually been. The conspiracy did not involve a

common plan seeking to fulfill a federal objective or enforce federal law; it sought to fulfill an openly personal goal of Mr. Trump's that the defendant acknowledged he shared. A finding that, as part of that conspiracy, the defendant may have committed one or even several acts that fell within the color of his office would not demonstrate that he was being prosecuted for an act "for or related to" his office. That is because the gravamen of the charge, the relevant *act* as contemplated by section 1442(a)(1), remains *conspiring itself*, and there is no evidence before the Court demonstrating that the conspiracy in which the defendant participated sought to further some authorized or lawful federal interest related to the defendant's office. As a result, the answer to the Court's question is no: a finding that some but not all of the defendant's overt acts were committed under color of his office would not suffice to authorize removal of his case.[4]

[4] A single reference in *Mesa v. California* stating that, regarding the presence of a federal question, "if there be a single such ingredient in the mass, it is sufficient. That element is decisive upon the subject of jurisdiction," provides no support for a contrary result. 489 U.S. 121, 129 (1989), citing *The Mayor v. Cooper*, 6 Wall. 247, 252 (1868). That statement related to the requirement that a defendant assert a federal defense, *id.*, and it does not reduce the defendant's burden in making the necessary showing: "It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and *he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty*." *Mesa*, 489 U.S. at 131-32, citing *Maryland v. Soper (No. 1)*, 270 U.S. 9, 33 (1926) (emphasis added). Here, in the question posed by this Court, the defendant

## II. The defendant cannot demonstrate that he has a colorable federal defense.

In the scenario outlined in this Court's question, the defendant would not be able to raise a "colorable federal defense." Such a defense is required in order to secure removal. *Mesa v. California*, 489 U.S. 121, 136 (1989). In the context of removal, "colorable" means "plausible." *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). The defendant has attempted to raise a defense of Supremacy Clause immunity, which requires him to show both that he was performing "an act which he was authorized to do by the law of the United States" and that, in performing that authorized act, "he did *no more than what was necessary and proper* for him to do." *In re Neagle*, 135 U.S. 1, 75 (1890) (emphasis added). In the Eleventh Circuit, a defendant's claim of Supremacy Clause immunity is negated by any evidence that they acted out of "personal interest, malice, actual criminal intent, or for any other reason than to do [their] duty as [they] saw it." *Baucom*, 677 F.2d at 1350.

A finding that some but not all overt acts occurred under color of office would not suffice to authorize removal of a conspiracy to violate Georgia's RICO statute. By contrast, a finding that some of the defendant's overt acts *did not* occur under

---

has not made a showing "excluding the possibility" that his prosecution is based on "acts or conduct of his not justified by his federal duty."

color of office would affirmatively *defeat* his attempt at removal because it would make it impossible for the defendant to plausibly raise a complete defense of Supremacy Clause immunity to Count 1.

As noted above, the question posed by this Court contemplates a finding that the defendant has committed at least one overt act under Count 1 outside the color of his office, which is *more* than what is required to convict the defendant under Count 1. This is because the State of Georgia need not prove that the defendant himself committed an overt act in furtherance of the conspiracy, but only that *someone* had committed such an overt act.[5] That person could be any other co-conspirator.[6] However, in the question posed by the Court here, where one or more

---

[5] Again, the example drawn from the facts of *Baucom* above is useful. If the federal agent in that case had been indicted for conspiracy, he still would have been able to remove his case, even if held responsible for the overt acts of *all* other co-conspirators. This is because those overt acts would all have been no more than what was "necessary and proper" to effectuate the bribery investigation and its plan, "an act which he was authorized to do under the laws of the United States." *Neagle*, 135 U.S. at 75.

[6] Georgia law is clear on this point: where a defendant is charged with conspiracy and also separately charged with a single overt act alleged against him, the fact that he was found not guilty of the charge involving the overt act does not foreclose a finding of guilty based upon the conspiracy where there is sufficient evidence of the commission of overt acts by others in furtherance of that conspiracy. *Thomas v. State*, 215 Ga. App. 522, 523, 451 S.E.2d 516, 517 (1994); *Hall v. State*, 241 Ga. App. 454, 460, 525 S.E.2d 759, 764 (1999) (defendant could be convicted of conspiracy even if the jury did not believe he committed the one overt act which he was independently alleged to have committed, as long as the overt act that his

overt acts fall outside the defendant's color of office, the State of Georgia's case would be much stronger than that: the person who committed an overt act would be *the defendant*. This would put the required showing under *Neagle* that he "did no more than what was necessary and proper for him to do" out of reach. Any Supremacy Clause immunity defense premised upon the argument that *some*, but not all, of the defendant's overt acts fell within the color of his office would be incomplete and insufficient, because a defense applicable only to individual overt acts does not function as a defense to a violation of O.C.G.A. § 16-14-4(c).[7]

co-conspirator allegedly committed was proven). As *Pasha* and the other cases cited above make clear, the State need not prove that Meadows engaged in *any* overt acts, so long as it shows that at least one co-conspirator engaged in at least one overt act. Indeed, under both Georgia and federal law an overt act need not be a crime in itself. *McCright v. State*, 176 Ga. App. 486, 487, 336 S.E.2d 361, 363 (1985). *See, e.g., Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975) ("The overt act requirement in the conspiracy statute can be satisfied much more easily. Indeed, the act can be innocent in nature, provided it furthers the purpose of the conspiracy."); *Pierce v. United States*, 252 U.S. 239, 243 (1920) ("Yet the overt act need not be in and of itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy."). Federal conspiracy law is to the same effect. *See, e.g., Bannon v. United States*, 156 U.S. 464, 468-469 (1895) (refusing to require that an overt act be proven against every member of the conspiracy).

[7] *See Donovan v. Schiavone Constr. Co.*, 601 F. Supp. 574, 579 n.7 (S.D.N.Y. 1985) (applying state substantive law to determine that where defendant's submitted defense of withdrawal did not include an additional required element, "under the applicable law, petitioner's claims regarding his withdrawal from [a conspiracy], if proven, *may not constitute a defense at all*.") (emphasis added).

Given the weight of authority contrary to the defendant's position, he will likely emphasize the permissive standards related to raising a colorable federal defense. However, while the defendant need not show a "clearly sustainable defense"[8] at this stage, he cannot even show a "*possibly* sustainable defense." Likewise, while he is not required to "virtually win his case,"[9] he cannot even show that his defense would make it *possible* for him to win his case. Supremacy Clause immunity could do neither under the scenario contemplated in this Court's question. To hold that a "plausible" defense need not be a "complete" defense would reduce the test for federal removal from "permissive" to "nearly invisible." Indeed, many federal courts have held that a "colorable federal defense" must be a "complete defense," a minimum requirement so uncontroversial that it does not appear to have ever been challenged. *See Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770, 778, 783 (E.D. Pa. 2010) ("Thus, the Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant

---

[8] *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

[9] *Id.*

asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial.").[10]

Simply put, "[s]ection 16-14-4(c) makes it illegal 'for any person to conspire or endeavor to violate' Section 16-14-4(a) [or (b)]. To violate section 16-14-4(c), one must either commit an overt act to 'effect the object of' the endeavor or conspiracy or a co-conspirator must commit such an overt act." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 728 (11th Cir. 2021). To prove that the defendant conspired to violate the RICO statute, the State of Georgia must prove that *some* co-conspirator committed *an* overt act. This scenario in the question posed by this Court contemplates the *defendant himself* having committed at least one overt act

[10] Courts that have followed *Hagen*'s formulation requiring the showing of a "complete defense" without any dispute include the Third Circuit, *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 815 (3d Cir. 2016); the Southern District of Alabama, *Morgan v. Bill Vawn Co., Inc.*, 2011 WL 6056083, * 5 (S.D. Ala. Dec. 6, 2011), *Davis v. Central Ala. Elec. Coop.*, 2015 WL 4742496 (S.D. Ala. Aug. 11, 2015); the Southern, Eastern, and Northern Districts of New York, *Williams v. Aetna Life Ins. Co.*, 2013 WL 593505, * 6 (S.D. N.Y. Jan. 30, 2013), *Gordon v. Air & Liquid Systems, Corp.*, 990 F.Supp.2d 311, 316-17 (E.D. N.Y. 2014), *Gates v. AO Smith Water Prods. Co.*, 2014 WL 104965, * 4-5 (N.D. N.Y. Jan. 9, 2014), *Crews v. Air & Liquid Systems, Corp.*, 2014 WL 636362, * 3 n. 2 (N.D. N.Y. Feb. 18, 2014); and many others. *See also Walkup v. Air & Liquid Systems Corp.*, 2013 WL 5448623, * 4-5 (D. Del. Sept. 26, 2013); *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, * 6 (D. Md. Mar. 7, 2013); *Thompson v. Crane Co.*, 2012 WL 1344453, * 20 (D. Haw. April 17, 2012); *Kraus v. Alcatel-Lucent*, 2018 WL 3585088 (E.D. Pa. July 25, 2018).

outside the color of his office. Such a finding would demonstrate that Supremacy Clause immunity could not function as a complete, and therefore plausible, defense. Thus, if the Court finds that any of the defendant's overt acts were not committed under color of his office, the defendant cannot raise a colorable defense of Supremacy Clause immunity.

## III. The defendant sees no distinction among his overt acts.

The scenario contemplated by the Court in its order seeking additional briefing distinguishes among the overt acts allegedly committed by the defendant, suggesting that some may fall under the color of his office while others may not. The State of Georgia again observes that the defendant makes no such distinction. In his Motion to Dismiss (Document 16-1), filed on August 19, the defendant insists that "[a]ll of the alleged conduct as to Mr. Meadows relates to protected political activity that lies in the heartland of First Amendment" and "[a]ll the substantive allegations in the Indictment concern unquestionably political activity and thus, if not covered by Supremacy Clause immunity, the charges would be barred by the First Amendment." Doc. 16-1 at 23-24. The State of Georgia has already submitted arguments to the Court regarding the interaction between the defendant's admission, the prohibitions applicable to him under the Hatch Act, and the scope of his duties as Chief of Staff. However, the State observes that the defendant has

characterized the "gravamen"[11] of his own conduct—all of his conduct—as "unquestionably political activity."

**CONCLUSION**

The defendant was indicted not for any individual overt act but for entering into a conspiracy to violate Georgia's RICO Act. The defendant must raise a colorable federal defense, not to some subset of overt acts, but to actual violation of O.C.G.A. § 16-14-4(c) with which he is charged. Thus, a finding that some, but not all, of the over acts attributed to the defendant in the Indictment occurred under the color of his office would not suffice to authorize removal. Instead, a finding that some, but not all, of the overt acts attributed to the defendant did *not* occur under color of his office would defeat the defendant's attempts at removal. Such a finding would preclude the defendant from raising a complete Supremacy Clause immunity defense to Count 1, and it would not alter the fact that the defendant had no lawful authority to enter into a conspiracy intended to overturn the results of Georgia's presidential election. Even if the burden on a defendant seeking removal is permissive, it is not nonexistent, particularly when his case is a criminal prosecution. Where the evidence before the Court and the defendant's own

[1111] *See Acker*, 527 U.S. at 447 (Scalia, J., concurring in part and dissenting in part).

admissions demonstrate that his conduct was not authorized by federal law or "no more than what is necessary and proper" for the performance of his duties, the defendant cannot meet his burden, and his Notice of Removal must fail.

Respectfully submitted, this 31st day of August 2023.

FANI T. WILLIS
DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT

By: *s/ F. McDonald Wakeford*
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
fmcdonald.wakeford@fultoncountyga.gov

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this pleading complies with the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.) in that it is double-spaced and composed in 14-point Times New Roman font.

This 31st day of August 2023.

CERTIFICATE OF SERVICE

I hereby certify the foregoing was served upon the following by email:

Joseph M. Englert
McGuire Woods LLP
1230 Peachtree Street NE, Suite 2100
Atlanta GA 30309
(404) 443-5500
jenglert@mcguirewoods.com

George J. Terwilliger
John S. Moran
Michael Francisco
McGuire Woods LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

Dated this 31st day of August, 2023.

*s/ F. McDonald Wakeford*
F. McDonald Wakeford